IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2026 Session

**STATE OF TENNESSEE v. TODD LEE WHITE**

**Appeal from the Criminal Court for Knox County**
**No. 124409   Steven Wayne Sword, Judge**

_____

**No. E2025-00151-CCA-R3-CD**

_____

A Knox County grand jury convicted the defendant, Todd Lee White, of unlawful possession of a weapon by a convicted felon and resisting arrest, for which he received an effective sentence of twenty-four years. On appeal, the defendant argues the trial court erred in denying his motion to suppress and in sentencing him as a Range III persistent offender. After reviewing the record, hearing oral argument, and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J. and JILL BARTEE AYERS, JJ., joined.

Martha Dinwiddie, Knoxville, Tennessee, for the appellant, Todd Lee White.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; Charme P. Allen, District Attorney General; and Jeannine Guzolek, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

This case relates to the September 13, 2022 service of a probation violation warrant upon the defendant. During the execution of the warrant, officers of the Knox County Sheriff's Office (KCSO) discovered evidence, including a cell phone, leading them to form probable cause to believe the defendant had committed a crime. On October 5, 2022, a search of the defendant's cell phone was conducted pursuant to a search warrant. The

search of the phone uncovered evidence that the defendant, who had previously been convicted of numerous felonies, was in possession of a firearm. As a result of the search of his residence and his cell phone, the defendant was charged with unlawful possession of a weapon, as well as resisting arrest and several other offenses. The defendant subsequently filed pretrial motions, including a motion to suppress the evidence seized from his cell phone. The trial court conducted a pre-trial hearing on this motion on November 30, 2023.

## I.    Motion to Suppress

On September 13, 2022, the KCSO went to the defendant's trailer after receiving an anonymous tip that the defendant, an absconded felon, was "armed with a handgun and assault style rifle" and "also selling drugs." The officers confirmed that the defendant had a warrant out of Jefferson County for violating his probation for a conviction of possession of marijuana with intent to deliver. They also confirmed that the defendant's probation status subjected him to be searched by law enforcement if there was reasonable suspicion that he had committed a crime.

After reaching the defendant's residence and knocking several times, the officers "heard a person moving in the back bedroom." After receiving no response from inside the trailer, the officers forced entry. Upon making entry, the officers found the defendant in his bedroom along with approximately 144 grams of individually packaged marijuana, approximately 3 grams of loose marijuana, a bong, a grinder, a mason jar, a digital scale with residue, used and unused baggies, a live round of ammunition, and a cell phone. In the defendant's closet, the officers discovered a hole in the floor, beneath which officers found a 9mm Sig Sauer semi-automatic pistol with three magazines and a black holster.

On October 5, 2022, Officer Khristian Pickett sought a search warrant for the contents of the defendant's cell phone. In his affidavit, Officer Pickett alleged that he had probable cause and reasonable grounds to search the cell phone for the following evidence:

- Incoming and outgoing telephone numbers,
- Text messages sent and received regarding illegal drug activity,
- Emails sent and received regarding illegal drug activity,
- Any images of drug activity,
- Any images of proceeds of drug activity,
- Any GPS location information,
- Any browser search history relating to location or drug sales,
- Any notes contained in applications,
- Any applications used to hide or secure information involving drug sales,

- Any applications designed to hide or hinder access to files,
- Any encryption keys.

The affidavit included the events that led to the discovery of the defendant's cell phone, including that the defendant had a warrant for violating his probation for a conviction of possession of marijuana with intent to deliver and enumerated the drug trafficking paraphernalia found in the defendant's bedroom. Officer Pickett also noted that in his experience with street-level drug investigations he had learned that drug dealers secure evidence of the type sought in their cell phones. Officer Pickett noted that he also knew that cell phones of this nature were commonly locked with passcodes or other biometric data.

The defendant argued in his motion to suppress that, although the evidence was seized pursuant to a search warrant, the search warrant was "constitutionally insufficient." Specifically, the defendant argued the search warrant was granted based upon an affidavit that "failed to establish a nexus between the place to be searched, the alleged crime, and the evidence to be seized." The State responded that the search warrant was sufficient and that the defendant, as a probationer, had consented to the search as a term of his probation.

No testimony was presented at the hearing. Following argument, the trial court took the matter under advisement. Ultimately, the trial court denied the defendant's motion to suppress the evidence seized from the defendant's cell phone, finding the information contained in Officer Pickett's affidavit was sufficient to establish probable cause that "evidence of illegal narcotic deals would be found on the cell phone discovered in the defendant's possession." Having come to this conclusion, the trial court refrained from deciding whether the search of the defendant's cell phone was constitutional based on his probationary status.

The defendant then proceeded to trial.

## II. Trial

The evidence produced at trial showed that after the KCSO received information that the defendant may have been engaged in the sale and distribution of drugs and in possession a firearm, Detective Kristian Pickett, a member of KCSO's narcotics unit, confirmed that there was a warrant for violation of probation for the defendant. Therefore, shortly after 8:00 a.m., on September 13, 2022, Detective Pickett and Detective Matthew Johnson, another member of the narcotics unit, along with several other officers, prepared to serve the warrant. When they arrived at the defendant's trailer, the weather was humid and dew was present on the ground. The trailer was a single-wide mobile home with a back-door entrance.

Detective Johnson testified that they knocked and announced that they had a warrant for the defendant's arrest. In return, the officers heard two sets of footsteps inside the trailer. The first set of footsteps sounded like a dog, and the second set was heard moving near the right side of the trailer. After receiving no response from inside the trailer, the officers forced entry.

The officers discovered the defendant inside the bedroom on the right side of the trailer. They also noted that his belt was unfastened. The defendant was instructed several times to "get on the ground." After the defendant refused to comply, Detective Johnson forced the defendant onto the bed. There was a brief struggle, necessitating several officers to overcome the defendant and place him under arrest.

Pursuant to the conditions of the defendant's probation, the officers conducted a search of the trailer. Inside the bedroom, the officers discovered approximately 144 grams of individually packaged marijuana, approximately 3 grams of loose marijuana, a bong, a grinder, a mason jar, a digital scale with residue, used and unused baggies, a live round of ammunition, and a cell phone. In the closet of the bedroom, there was a hole in the floor which provided access underneath the trailer. Under the trailer, a 9mm Sig Sauer P365 semi-automatic pistol was discovered near the hole. Although the ground underneath the trailer was dirty and damp, the firearm was clean, dry, and free of rust. Alongside the firearm, the officers discovered three loaded magazines and a "concealed carry" holster designed to be worn inside a waistband. The holster also lacked moisture or dirt. Detective Johnson testified that in his experience as a certified law enforcement officer, firearms that are located outdoors for extended periods of time "tend to have superficial rust that develops quickly to the components on the inside of the gun and also the magazines." Detective Johnson also stated that after retrieving the firearm from underneath the trailer, it felt warmer than the ambient temperature.

A forensics analysis of the Sig Sauer was performed by Sergeant Sandi Price, an expert in latent fingerprint processing with the forensics services unit of the KCSO. Sergeant Price testified that she was unable to recover any usable latent fingerprints, stating that it was rare to obtain usable fingerprints from a firearm.

Officer Stephanie Vanwinkle, a digital examiner with the KCSO's cyber forensics unit and an expert in cyber forensics, performed an extraction of the defendant's cell phone. Using a program named Cellebrite, Officer Vanwinkle created an exact copy of the contents of the defendant's cell phone from which a summary was generated. The defendant's cell phone data revealed text messages between himself and others relating to the cultivation and sale of marijuana. In addition, a text message from the defendant stated, "just point your finger and ur [sic] gun is your finger . . I love my sig."

Additionally, several photographs were discovered on the defendant's cell phone depicting a Sig Sauer firearm in various settings. Detective Pickett testified that the firearm in the photographs appeared to be similar to the Sig Sauer P365 found under the defendant's trailer. Detective Johnson, testifying as an expert in general firearm knowledge, testified that he believed the gun depicted in the photographs to be an actual firearm, and not a BB gun. In making this determination, Detective Johnson noted several features that were visible in the photographs: a "loaded magazine indicator," the inside of the barrel's "lands and grooves," the "copper residue" on the inside of the barrel, a "loaded chamber indicator," "night sight," and a flat "magazine base plate." While he agreed there was no way to definitively identify the firearm in the photograph as the same firearm that was under the defendant's trailer, Detective Johnson testified that the firearm in the photograph was consistent with a real firearm.

The Sig Sauer P365 pistol found under the trailer was traced to a purchaser, Ciara Everett. Ms. Everett testified that she had previously lived with the defendant from the fall of 2021 to the spring of 2022. During that time, she worked the night shift at a gas station. Because she worked the shift alone and out of safety concerns, she purchased the Sig Sauer in late February of 2022. Eventually, Ms. Everett vacated the trailer due to its dilapidated condition and moved into a residence with children present. She testified that out of concern for the children's safety, she did not take the firearm with her. Ms. Everett claimed that she stored the Sig Sauer underneath the trailer because she knew that the defendant was not permitted to possess a firearm. She testified that after she left the premises, she visited the trailer once to check on the firearm. She stated that she purchased bullets, cleaned the firearm, and replaced them under the trailer. In addition, Ms. Everett stated that she acquired the holster from the defendant through a trade. Ms. Everett testified that at no point did she tell the defendant that the Sig Sauer was underneath the trailer.

Following deliberations, the jury found the defendant guilty of unlawful possession of a weapon by a convicted felon and resisting arrest. The jury was unable to reach a verdict on the remaining counts, which the State dismissed.

### III.    Sentencing Hearing

A sentencing hearing was held on July 18, 2024. At the onset of the hearing, the State introduced the defendant's presentence report. To support its request to declare the defendant a Range III persistent offender, the State introduced judgment forms of five of the defendant's prior convictions:

1) First Degree Burglary, Case No. 29718, Judgment Date: 1/15/1988;

2) Aggravated Burglary, Case No. 42058, Offense Date: 6/24/1990, Judgment Date: 11/5/1991;

3) Robbery, Case No. 65404, Offense Date: 10/21/1997, Judgment Date: 8/16/1999;

4) Larceny, Case No. 29334, Judgment Date: 1/15/1988;

5) Robbery, Case No. 65404, Offense Date: 1/6/1998, Judgment Date: 8/16/1999.

In addition, the State introduced the testimony of Detective Kristian Pickett, concerning the defendant's abscosion during the trial of the instant case and his subsequent arrest. Detective Pickett testified that the defendant did not appear at trial on April 3, 2024, nor did he appear when the verdict was read. On April 4, 2024, a capias was issued for the defendant's arrest. On the same day, the defendant was located and arrested. During the arrest, the detectives discovered a backpack, a cell phone, cash, and hydrocodone pills. Inside the backpack, Detective Pickett found a digital scale, baggies, an inhaler, and marijuana. Detective Pickett testified that in his experience these items were indicative of an intent to sell the marijuana. In addition, text messages recovered from the cell phone, pursuant to a search warrant, included statements that the defendant was "hiding in the woods."

The State also introduced the testimony of Captain Aaron Turner, the assistant facilities commander at the Knox County Jail. As part of his duties in that role, Captain Turner testified that he was the custodian of records for inmate communications, specifically inmate phone and video calls. The State then introduced several phone and video calls in which the defendant was heard and seen saying that he could not wait to find that "snitching motherf***er . . . I'm going to handle my business . . . it won't be the first time but it will probably be the last."

After the State submitted its proof, the defendant introduced medical records reflecting the defendant's diagnoses of COPD, agoraphobia, PTSD, and panic disorder. In addition, the defendant made a statement on his own behalf. The defendant asked the trial court "to have mercy" considering his advanced age. He stated, "I would never hurt nobody or do nothing to nobody."

The trial court then heard argument from the State as to its requested enhancement factors and the defendant's offender classification. Pursuant to Tennessee Code Annotated section 40-35-114, the State argued that enhancement factor (1), a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, should be applied due to the defendant's lengthy criminal history beginning during the defendant's juvenile years. In addition, the State argued that the

defendant's criminal behavior extended beyond even the conviction at issue, referencing his jail video call threatening to "handle his business," when he discovered "the MF'ing snitch," and the defendant's possession of drug trafficking paraphernalia when he was arrested after trial.

As to enhancement factor (8), failure to comply with the conditions of a sentence involving release into the community before trial or sentencing, the State argued this factor should also apply because the defendant absconded during trial. Similarly, the State argued enhancement factor (13), at the time the felony was committed, the defendant was released on probation, should also be applied as the defendant was being served with a warrant for violation of probation when the evidence of his possession of a firearm was discovered.

In response, the defendant argued that the State had failed to prove beyond a reasonable doubt that the defendant qualified as a Range III persistent offender. Specifically, the defendant noted that the judgment forms for his convictions for first degree burglary and larceny lacked offense dates, and because they shared the same date of judgment, the State could not prove that they did not occur within the same 24-hour period. Therefore, the defendant argued that those two convictions should merge and count as one conviction for purposes of range offender classification, rendering the defendant a Range II repeat offender.

In reply to the State's request for the application of enhancement factor (1), the defendant argued that his juvenile criminal history should not be considered. The defendant also contended that most of the defendant's convictions were misdemeanors that occurred when he was 18 or 19 years old and were unrelated to his present conviction for possession of a firearm. Finally, the defendant argued that, while marijuana was illegal in Tennessee, it was no longer considered a "serious offense."

As to enhancement factor (8), the defendant argued that it was inapplicable to the case at bar because the defendant was on bond when he absconded from trial, and the factor was intended to apply a defendant's failure to comply with probation or parole. Likewise, the defendant argued enhancement factor (13) was inapplicable as the defendant was not eligible for probation in the instant sentencing determination.

As to mitigating factors, the defendant requested the trial court apply the Tennessee Code Annotated section 40-35-113 mitigating factor (1), the defendant's criminal conduct neither caused, nor threatened, bodily harm, as his conviction was for the possession of a firearm and not for its use. The defendant also requested the trial court consider non-statutory mitigatory factors such as his age and health. He argued that his diagnoses of PTSD, agoraphobia, and panic disorder were related to his prior incarcerations and caused him to be "unable to go in public places for fear of panic always [sic] and was feeling like

he always had to watch his back." In addition, the defendant argued that his violation of probation was due to losing access to transportation, but prior to that he had successfully complied with his probation.

Lastly, the defendant asked the trial court to consider the principles and purposes of sentencing pursuant to Tennessee Code Annotated sections 40-13-102, -103. The defendant asked that if the trial court found the defendant to be a Range III offender, that the trial court find the minimum sentence be the "least severe measure necessary to achieve the purposes for which the sentence is imposed." The defendant argued that a potential maximum sentence of 30 years for a nonviolent offense was disproportionately severe compared to those given to violent offenders.

After hearing argument, the trial court stated that it considered the evidence presented, the presentence report, the purposes and principles of sentencing, arguments presented, nature and characteristic of the criminal conduct involved, mitigation and enhancement factors, statistical information, and the defendant's statement.

As an initial matter, the trial court turned to the defendant's offender classification. The trial court found that the defendant's two judgement forms that were filed on January 15, 1988, had docket numbers that were "quite different." The trial court inferred from the gap in docket numbers that these were "not only separate indictments, but separate incidents. . . ." Ultimately, the trial court found that the circumstantial evidence in the sentencing orders indicated that the 24-hour rule was not implicated, and therefore, the two convictions did not merge. Accordingly, the trial court found the State had proven beyond a reasonable doubt that the defendant was a Range III persistent offender.

The trial court then turned to its determination of sentence. The trial court stated that as to enhancement factor (1), the defendant's previous history of criminal behavior, it would not consider the convictions subsumed by meeting the Range III requirement or the defendant's juvenile convictions. However, the trial court did consider the defendant's additional criminal behavior: "the drugs and the failure to appear by leaving court in the middle of trial." The defendant's failure to appear at trial was "significant" to the trial court.

As to enhancement factor (8), the trial court found the defendant had failed to comply with the conditions of his sentence involving release in the community as he had a "very long criminal history" on probation and parole and had been revoked on both. As for the defendant's violation of probation that prompted the defendant's arrest in the present matter, the trial court stated that it applied as well.

- 8 -

In considering the mitigation factors, the trial court found that the defendant's criminal conduct did not threaten or cause serious bodily injury and applied mitigation factor (1). However, as to the catch-all mitigation factors, the trial court found that the defendant had "chosen to engage in – in a lifetime of criminal behavior and hasn't learned anything." Thus, the trial court found that the enhancement factors "significantly outweigh the mitigation."

Ultimately, after highlighting the defendant's "lengthy criminal history," and "his continued engagement in criminal behavior, even after – or in the middle of trial. . .," the trial court sentenced the defendant to an effective sentence of twenty-four years with the Tennessee Department of Correction.[1]

The defendant filed a motion for new trial. After a hearing, the trial court denied the motion, and this timely appeal followed.

*Analysis*

On appeal, the defendant claims that the trial court erred in denying his motion to suppress the evidence discovered on his cell phone, arguing the affidavit upon which the search warrant was based was insufficient. The defendant also asserts the trial court erred in classifying him as a Range III persistent offender as the State failed to prove the defendant's convictions beyond a reasonable doubt. The State responds that the trial court properly denied the defendant's motion to suppress as the affidavit was sufficient to obtain a search warrant of the defendant's cell phone. The State also argues that the trial court did not abuse its discretion in relying upon the evidence presented at the sentencing hearing to determine the defendant's offender classification. Upon review, we agree with the State.

## I.       Denial of the Motion to Suppress

The defendant contends that the trial court erred in denying his motion to suppress the evidence obtained pursuant to a search warrant for the contents of his cell phone. He argues the search was unconstitutional because the warrant was based upon an affidavit that lacked an adequate nexus between the criminal activity, the place to be searched, and the evidence to be seized. The State responds that the warrant was sufficient, and alternatively, that the admission of the obtained evidence pursuant to the warrant was harmless, and as a second alternative, that the evidence was admissible pursuant to the good faith exception to the warrant requirement. Lastly, the State counters that the

---

[1] The defendant was sentenced to twenty-four years in confinement for unlawful possession of a weapon by a convicted felon and six months in confinement for resisting arrest. The two sentences were to run concurrently.

evidence obtained from the search was admissible pursuant to an exception to the warrant requirement because the defendant provided informed consent to the search as a condition of his probation. After review, we agree with the State that the search warrant was constitutional.

A trial court's findings of fact at a suppression hearing are binding on an appellate court unless the evidence preponderates against them. *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014). "The credibility of the witnesses, the weight and value of the evidence, and the resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact." *Id.* at 529 (citing *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012)). "The prevailing party in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). However, this court reviews the trial court's application of the law to the facts de novo with no presumption of correctness. *See State v. Montgomery*, 462 S.W.3d 482, 486 (Tenn. 2015) (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution guarantee freedom from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. It is well established that Article 1, section 7, is identical in intent and purpose to the Fourth Amendment. *State v. Reynolds*, 504 S.W.3d 283, 312–13 (Tenn. 2016); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). These guarantees exist to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967); *see State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997).

In Tennessee, a search warrant must be issued on a finding of probable cause and supported by an affidavit setting forth "facts tending to establish" probable cause. Tenn. Code. Ann. § 40-6-103, -104; *see State v. Williams*, 193 S.W.3d 502, 506 (Tenn. 2006). The affidavit must state facts and not merely conclusory allegations. *State v. Tuttle*, 515 S.W.3d 282, 300 (Tenn. 2017). The determination of probable cause is made based upon consideration of the totality of the circumstances. *Id.* at 299. The issuing magistrate should use common sense when determining whether the affidavit supports a finding of probable cause. *State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2005).

To establish probable cause, "the affidavit must show a nexus among the criminal activity, the place to be searched, and the items to be seized." *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009) (citing *State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002)). To determine whether a sufficient nexus has been shown, reviewing courts should "consider whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] . . . the nature of the property sought, the normal inferences as to

- 10 -

where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence." *Id.* at 206. Where the affidavit contains no direct evidence of such nexus, we must determine "whether it was reasonable for the magistrate to infer the items of contraband listed in [the] affidavit would be located" in the place to be searched. *Id*.

In the case at bar, the defendant argues the affidavit upon which the search warrant was based lacked probable cause because it was void of the required nexus between the alleged crime of illegal drug activity, the cell phone data, and the potential evidence to be seized such as text messages and photographs. The defendant claims the affidavit contained only unparticularized, conclusory statements related to "drug traffickers." We disagree.

The affidavit in this case stated that after receiving an anonymous complaint that the defendant was an absconded felon selling drugs, the detectives confirmed there was a warrant for the defendant from Jefferson County for possession of marijuana with intent to deliver. The affidavit also stated that after entering the defendant's bedroom to place him under arrest, the detectives performed a search of the room that uncovered several bags of packaged marijuana in various quantities, loose marijuana, a scale, several ziploc and vacuum sealed baggies, a bong, a grinder, and the defendant's cell phone. The affidavit explained the detective's experience with narcotics dealers and their use of cell phones in the course of drug trafficking. The affidavit also explicitly sought evidence related to illegal drug activity in particularized forms.

From these facts and assertions, it is reasonable for a magistrate to rationally infer that the defendant would keep evidence of selling drugs in his cell phone. The affidavit provided evidence to establish that the defendant was a convicted drug trafficker, that paraphernalia associated with the trafficking of drugs was found in the defendant's trailer with his cell phone, and that evidence of drug trafficking is frequently found in cell phones. Accordingly, the affidavit provided a sufficient nexus for finding probable cause to issue the search warrant, thereby rendering the search of the defendant's cell phone constitutional.

The defendant seeks to draw a parallel between the facts of the present case and that of *United States v. McPhearson*, in which the Sixth Circuit held that a search of a defendant's home was unconstitutional. 469 F.3d 518 (6th Cir. 2006). In *McPhearson*, the defendant was arrested outside of his home for a non-drug offense while he was in possession of crack cocaine. The affidavit *McPhearson* "did no more than state that McPhearson, who resided at 228 Shelby Street, was arrested [outside his residence] for a non-drug offense with a quantity of crack cocaine on his person. *Id.* at 524. The Sixth Circuit, in determining that the affidavit lacked the sufficient nexus, cited cases where a

sufficient nexus existed, noting that in those instances "an additional fact" existed "that permitted a magistrate to draw the inference that evidence of wrongdoing would be found. . . ." *Id*. at 524 (citing *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002) (internal citations omitted)). Ultimately, the Sixth Circuit found that if an affidavit lacked a specific fact linking the defendant to the alleged illegal activity, a sufficient nexus did not exist. *Id.* at 525.

The defendant argues that the facts of *McPhearson* are equivalent to the case at bar, and therefore, the present affidavit did not support any inference by the magistrate that there was evidence of wrongdoing to be found on the defendant's cell phone. However, the defendant has ignored salient details of the affidavit: the defendant's known conviction for possession of marijuana with the intent to deliver and the copious pieces of drug paraphernalia in the defendant's bedroom. In contrast to *McPhearson*, here, the affidavit contained "additional facts," connecting the defendant to the potential evidence of illegal drug activity. Accordingly, the facts of *McPhearson* are not analogous, and this argument has no merit.

Moreover, the defendant appears to argue that the nature of the evidence to be searched, cell phone data, necessitates a heightened scrutiny for search warrants. Specifically, he warns that, "courts should be especially careful in determining whether a search warrant for a cell phone properly establishes probable cause." Citing the United States Supreme Court's case *Riley v. California,* the defendant quotes that cell phones are a unique "property" due to the "vast quantities of personal information literally in the hands of individuals." 573 U.S. 373, 386 (2014). However, the defendant mentions no precedent for this proposition as it relates to the analysis at bar. The Supreme Court's concerns in *Riley* were for the invasive nature of the search of a cell phone when balancing that with the governmental interest of a search incident to arrest. *Id.* at 403. In fact, the Court's answer to how to protect citizens from the potential for an invasion into "the sum of an individual's private life," was clear – "get a warrant." *Id.* at 394, 403. The government did exactly that in the case at bar. Therefore, despite cell phones' omnipresence and potential for invasion of privacy, as it relates to whether a search warrant is constitutional, the analysis remains the same.

Because the search of the defendant's cell phone was constitutional pursuant to a valid search warrant and because the trial court made no findings concerning the defendant's probationary status, it is not necessary to answer whether the defendant's status equated consent to a search of his cell phone, particularly in light of the trial court's abstention from the issue.

## II.     Offender Classification

The defendant argues the trial court erred in classifying him as a Range III persistent offender.  Specifically, the defendant argues that the trial court erred in finding the State carried its burden in proving the defendant's convictions were sufficient to qualify as a persistent offender, arguing that two of the convictions should have merged for the purposes of classification.  The State responds that trial court's determination was not an error.

Our supreme court has recognized that "[t]he standard of review applicable to the length of sentences adopted in *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012), has now been applied to the trial court's determination of an offender's range classification." *State v. Garrens*, No. W2024-00258-CCA-R3-CD, 2025 WL 1307696, at *6 (Tenn. Crim. App. May 6, 2025) (quoting *State v. Christian*, No. M2018-00320-CCA-R3-CD, 2019 WL 3948933, at *5 (Tenn. Crim. App. Aug. 21, 2019)), *no perm. app. filed*.  If the trial court's determination is supported by the record and reflects the trial court properly applied the purposes and principles of sentencing, "the trial court's decision is reviewed for an abuse of discretion, with a presumption of reasonableness." *Id.*

A Range III persistent offender "is a defendant who has received . . . [a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable . . . ." Tenn. Code Ann. § 40-35-107(a)(1).  Additionally, what is known as the 24-hour merger rule states,

> In determining the number of prior felony convictions a defendant has received[,] . . . [e]xcept for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims, or convictions for the offense of aggravated burglary under § 39-14-403, conviction for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions[.]

*Id*. § 40-35-107(b)(4).

In the case at bar, the defendant's judgment forms for his convictions for first-degree burglary and larceny were void of the dates of the actual offense.  The defendant contends that their absence means the State failed to meet its burden to prove his Range III status, but he has misplaced the burden as it relates to the 24-hour merger rule.  "A criminal defendant has the burden of proving that his crimes were performed within a twenty-four-hour period so as to fall under the merger rule." *State v. Jackson*, No. M2019-01128-CCA-R3-CD, 2020 WL 2488763, at *15 (Tenn. Crim. App. May 14, 2020); *State v. Watts*, No.

- 13 -

E2010-00553-CCA-R3CD, 2011 WL 5517000, at *7 (Tenn. Crim. App. Nov. 8, 2011); *State v. Polly*, No. M1999-00278-CCA-R3-CD, 2000 WL 1606586, at *3 (Tenn. Crim. App. Oct. 27, 2000).

Here, the defendant has offered no evidence that his offenses of first-degree burglary and larceny were committed within the same twenty-four-hour period. In addition, the trial court's inference that the defendant's offenses were not committed within the same twenty-four hours based upon their docket numbers was reasonable. Moreover, the presentence report, as introduced by the State without objection by the defendant, included the offense dates of the defendant's convictions. The presentence report listed the defendant's first-degree burglary offense as occurring on March 15, 1986, and the larceny offense on June 15, 1986. The record makes clear these two offenses did not occur within the same twenty-four-hour period. Accordingly, the defendant has not established that the trial court abused its discretion in sentencing him as a Range III persistent offender.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

s/ *J. ROSS DYER*
J. ROSS DYER, JUDGE